IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-02148-RBJ

JULIE A. WILLCOXON,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commission of Social Security,

    Defendant.

---

# ORDER

---

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Julie Willcoxon's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons below, the Court REVERSES and REMANDS the Commissioner's decision.

## I. STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial

1

evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## II. BACKGROUND

Ms. Willcoxon is 33 years old. *See* R. 22. She lives in Trinidad, Colorado with her husband and three children and has a high school education. R. 37, 171. She shares the responsibility for taking care of the kids with her husband, and she can perform basic household chores such as washing dishes and grocery shopping at a delayed pace. R. 68–69, 74. She can no longer drive due to her health issues, and her husband does the cooking. R. 74. Ms. Willcoxon has no significant work history as defined by Social Security regulations, but she did work as a janitor and housekeeper at a hotel for a limited period of time. R. 22.

Ms. Willcoxon alleges that she began suffering from a seizure disorder after giving birth to her son in June 2012. R. 68. She alleges that she suffers nearly 60–70 seizures each year, and that these seizures cause back and neck pain, anxiety due to her fear of having another seizure, fatigue, confusion, and soreness lasting seven to ten days after a seizure. R. 260. Her medical record reflects differing opinions about the cause and legitimacy of her seizure disorder. At least three doctors have diagnosed her with having pseudo-seizures, which are non-epileptic seizures that result from psychological conditions such as stress or anxiety rather than brain function. *See* R. 500 (Dr. Riley noting prior diagnosis of pseudo-seizures), 616–624 (Dr. Berg noting that "her physicians and 2 neurologists say these episodes are not true seizures."). However, at least one

2

doctor, Dr. Riley, noted that he "witnessed another seizure [Ms. Willcoxon] had here in the [emergency department] and it was a true epileptic seizure." R. 500. In addition to seizures, Ms. Willcoxon asserts that she suffers from frequent migraines, anxiety, depression, and asthma. R. 562, 435.

### A. Procedural History.

Ms. Willcoxon filed an application for SSI on March 18, 2016 and listed a disability onset date of July 1, 2012. R. 15. Her claim was administratively denied on July 15, 2016, so she filed a request for a hearing before an administrative law judge ("ALJ"). *Id.* On April 5, 2017 a hearing was held before ALJ William Musseman. *Id.* At this hearing, Ms. Willcoxon amended her alleged onset date to March 18, 2016. *Id.* On June 20, 2017, the ALJ issued an unfavorable decision. R. 12–23. Ms. Willcoxon appealed this decision to the Appeals Council, but the Council denied review on July 26, 2017. R. 1–6. Ms. Willcoxon then filed a timely appeal in this Court. ECF No. 1. Because the Appeals Council denied review, the ALJ's decision serves as the Commissioner's final decision for purposes of this Court's review. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). The issues have been fully briefed. ECF Nos. 14, 15, 18.

### B. The ALJ's Decision.

The ALJ determined that Ms. Willcoxon is not disabled and therefore denied benefits. R. 12–23. In making this decision, the ALJ followed the SSA's standard five-step evaluation process. First, the ALJ found that Ms. Willcoxon has not engaged in substantial gainful activity since her alleged onset date of March 18, 2016. R. 17. At step two, the ALJ found that Ms. Willcoxon has the severe impairments of seizure disorder and migraine headaches secondary to

the seizure disorder and obesity. *Id.* Also during step two, the ALJ determined that Ms. Willcoxon's back pain, neck pain and asthma are non-severe impairments. R.18. He then assessed Ms. Willcoxon's mental impairments of depression and anxiety in accordance with the psychiatric-review technique required by SSA regulations. *See* 20 C.F.R. § 404.1520a. Pursuant to this technique, the ALJ assessed the degree to which Ms. Willcoxon's mental impairments limit her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself. *Id.* Because the ALJ found that Ms. Willcoxon has no more than mild limitations in any of the four categories, the ALJ determined that Ms. Willcoxon's depression and anxiety are non-severe impairments. R. 19.

At step three, the ALJ found that Ms. Willcoxon's impairments do not meet a Listing. R. 19. The ALJ then determined that Ms. Willcoxon has a residual functional capacity ("RFC")—which is a claimant's ability to do work on a sustained basis despite limitations from her impairments—to perform "light work" subject to a few limitations.[1] R. 20–21. Because Ms. Willcoxon has no past relevant work, the ALJ proceeded directly to step five of the analysis. At step five, the ALJ presented a hypothetical set of facts representing Ms. Willcoxon's RFC, age, education, and work experience to a vocational expert. R. 22. Using the vocational expert's response to the hypothetical scenario, the ALJ determined that Ms. Willcoxon can perform several jobs that exist in significant numbers in the national economy. *Id.* For example, Ms. Willcoxon could perform the role of a small products assembler or an electronic assembly

---

[1] The ALJ determined that Ms. Willcoxon cannot climb ladders or scaffolds, and that she cannot be exposed to unprotected heights, moving machinery, or hazardous work areas. R. 20.

worker. *Id.* Therefore, the ALJ determined that Ms. Willcoxon is not disabled and denied her application for SSI benefits. R. 23.

## III. ANALYSIS

Ms. Willcoxon argues that reversal is appropriate because the ALJ made the following errors:

(1) failing to determine that Ms. Willcoxon's anxiety and depressive disorder are severe at step two;
(2) failing to consider Mr. Willcoxon's anxiety and depressive disorder when formulating the RFC;
(3) failing to develop the record;
(4) failing to consider whether Ms. Willcoxon met a medically equaled listing 12.07;
(5) improperly determining that Ms. Willcoxon has an RFC for "light work" in light of Dr. Morton's opinion;
(6) giving too little weight to Ms. Willcoxon's mother's statement;
(7) failing to consider the opinion of the Otero County Department of Human Services; and
(8) in his credibility finding regarding Ms. Willcoxon's testimony.

*See* ECF No. 14 at 17–31. After reviewing the ALJ's decision in accordance with the substantial evidence standard, I find that I must grant Ms. Willcoxon's request to reverse and remand. My reasons are explained below.

**A. ALJ's Failure to Determine that Ms. Willcoxon's Anxiety and Depressive Disorders are Severe at Step Two.**

Ms. Willcoxon first argues that the ALJ's failure to find her anxiety and depressive disorders severe at step two is reversible error. In response, the Commissioner contends, and I agree, that the ALJ's failure to discuss the mental impairments at step two was harmless, since the ALJ deemed other impairments severe and proceeded to step three. ECF No. 15 at 9; *see also Ray v. Colvin*, 657 F. App'x 733, 737 (10th Cir. 2016) ("[A]n error in determining an impairment's severity at step two . . . is not reversible if the ALJ proceeds further to evaluate other impairments."). Because the ALJ determined that Ms. Willcoxon has the severe

5

impairments of a seizure disorder and migraines at step two and therefore proceeded to step three, Ms. Willcoxon's first argument must fail. R. 17.

## B. ALJ's Failure to Consider Mr. Willcoxon's Anxiety and Depressive Disorder when Formulating the RFC.

Ms. Willcoxon next argues that the ALJ committed reversible error when he failed to consider her anxiety and depressive disorders when formulating her RFC. ECF No. 14 at 20. I agree. Under SSA regulations, the ALJ must consider and discuss *all* of a claimant's impairments in formulating her RFC. *See Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013) (citing 20 C.F.R. § 416.945(a)(2)). This is true even with regard to impairments that the ALJ did not find "severe" at step two. *Id.* Here, in his analysis of Ms. Willcoxon's RFC, the ALJ failed to mention—let alone analyze—the effect of Ms. Willcoxon's anxiety and depressive disorders on her ability to function in a workplace. His boilerplate statement that he "considered all symptoms" when formulating the RFC is not enough to remedy his failure to actually discuss her alleged mental disorders. *See Salazar v. Barnhart*, 468 F.3d 621, 622 (10th Cir. 2006).

Further, his failure to discuss Ms. Willcoxon's mental impairments when formulating the RFC is especially glaring in light of the paragraph appearing immediately before the RFC analysis. The ALJ expressly noted that the mental limitations he discussed at step two "are not a residual functional capacity assessment" and that the RFC assessment "requires a more detailed assessment" of the mental disorders. R. 19. As such, I agree with Ms. Willcoxon that the RFC was improperly formulated, and I therefore mandate the reversal of the ALJ's decision. On remand, I instruct the ALJ to consider all of Ms. Willcoxon's impairments, including her depression and anxiety, when calculating her RFC.

C. **ALJ's Failure to Develop the Record.**

Ms. Willcoxon next argues that the ALJ failed to sufficiently develop the record when he failed to order a consultative exam regarding Ms. Willcoxon's mental impairments and seizure disorder. ECF No. 14 at 22–23. Specifically, Ms. Willcoxon argues that the ALJ should have ordered a consultative exam to discern what limitations resulted from Ms. Willcoxon's alleged history of head injuries; to settle conflicts in the record regarding the etiology of her seizures; and to provide additional evidence that "the anxiety and depressive disorders caused severe impairments." *Id.*

This argument fails. While the ALJ has a duty to develop the record and this duty may sometimes require ordering a consultative examination, the ALJ "has broad latitude" in determining whether to do so. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). Situations in which a consultative examination may be required include direct conflicts in the medical evidence, when the medical evidence is inconclusive, or when "additional tests are required to explain a diagnosis." *Id.*

Although the ALJ failed to discuss Ms. Willcoxon's mental impairments in formulating the RFC, as noted above, it was not for lack of evidence in the record or due to insurmountable conflicts in the evidence. Ms. Willcoxon's request for the consultative exam reads more like an evidentiary wish list than a substantive argument that the ALJ failed to develop the record fully. Here, the record is chock-full of medical reports, most of which directly address Ms. Willcoxon's mental impairments and the presumed etiology of her seizures. *See generally* R. 230–720. Because there was sufficient evidence in the record from which the ALJ could make his determination about her seizure disorder and mental impairments, I find that the ALJ did not

err in failing to order a consultative examination. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).

**D. ALJ's Failure to Consider Whether Ms. Willcoxon Met or Medically Equaled Listing 12.07.**

Ms. Willcoxon next argues that the ALJ erred at step two when he failed to consider whether her seizure disorder met or medically equaled Listing 12.07, which covers somatic symptoms and related disorders. ECF No. 14 at 24–26. The ALJ considered whether Ms. Willcoxon's seizures met or medically equaled Listings 11.02 (convulsive epilepsy) or 11.03 (nonconvulsive epilepsy). R. 19. He found that they did not. Ms. Willcoxon argues that the ALJ should have also analyzed her impairments under Listing 12.07. In response, the Commissioner argues that Listing 12.07 should only be considered when the "[s]ymptoms of altered voluntary motor or sensory function [] *are not better explained* by another medical or mental disorder," and that therefore the ALJ was correct in analyzing Ms. Willcoxon's impairments under Listings 11.02 and 11.03 rather than 12.07. *See* ECF No. 15 at 11 (emphasis added) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.07A).

While the ALJ's analysis of Ms. Willcoxon's impairments under 11.02 and 11.03 was proper based upon some doctors' opinions that Ms. Willcoxon suffers from epileptic seizures, I agree with Ms. Willcoxon that the ALJ should have also analyzed her impairments under 12.07. At least three doctors opined that Ms. Willcoxon's seizures were not epileptic in nature and instead were pseudo-seizures. *See* R. 397-398, 500, 616–624. Therefore, Listings 11.02 and 11.03 concerning epilepsy do not "better explain[]" Ms. Willcoxon's impairments but at best is an equally plausible explanation. As such, analyzing her claim under Listing 12.07 in addition to

8

11.02 and 11.03 would have accounted for the ambiguous etiology of her impairment. I therefore instruct the ALJ to consider Ms. Willcoxon's seizures under Listing 12.07 on remand.

### E. ALJ's Improper Determination that Ms. Willcoxon has an RFC for "Light Work" in Light of Dr. Morton's Opinion.

Ms. Willcoxon asserts that the ALJ's determination that she has an RFC for "light work" is reversible error in light of opinion evidence in the record. ECF No. 14 at 26. Although I have already found that the ALJ's RFC determination failed to account for Ms. Wilcoxon's mental impairments and thus must be reversed, the argument presented here is of a different nature. Here, Ms. Willcoxon disagrees with the ALJ's treatment of Dr. Morton's opinion when formulating the RFC. Dr. Morton opined that Ms. Willcoxon has marked limitations in her ability to get along with supervisors, co-workers, and the general public. R. 364–69. At the hearing before the ALJ, the vocational expert testified that such a limitation would foreclose all competitive employment, and as such would dictate a finding of "disabled." R. 77–78. However, the ALJ gave Dr. Morton's opinion "little weight" and determined that Ms. Willcoxon was not encumbered by such marked limitations. R. 19. The ALJ provided the following reasons for doing so: Dr. Morton's opinions are internally inconsistent; there is no longitudinal, documental medical evidence to support his opinions; and Dr. Morton's opinions are based upon the complainant's subjective complaints only, which are not supported by the record. R. 18–19. An ALJ is entitled to discount the opinions of a medical source as long as he provides good reasons for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Because the ALJ explained his reasoning for discounting Dr. Morton's opinion, I find that the ALJ's decision to discount Dr. Morton's opinion was proper.

### F. ALJ's Improper Weighing of Ms. Willcoxon's Mother's Statement.

Ms. Willcoxon's mother provided a statement regarding Ms. Willcoxon's ailments and health history. R. 343–44. The ALJ considered this statement but gave it little weight because: (1) there was no evidence that Ms. Willcoxon's mother has the requisite medical training to make such observations, and (2) her observations were otherwise unsupported by medical evidence in the record. R. 21. Ms. Willcoxon argues that this constitutes error, but I disagree. Because the ALJ explained his treatment of said evidence, his decision to discount Ms. Willcoxon's mother's opinion was proper. *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (ALJ may discount claimant's family member's opinion as long as the written decision makes clear that the ALJ considered it).

### G. ALJ's Failure to Consider the Opinion of the Otero County Department of Human Services.

The Otero County Department of Human Services prepared an assessment of Ms. Willcoxon's eligibility for care in June 2016. R. 456–76. Mr. Willcoxon takes issue with the ALJ's failure to address this assessment in his decision. ECF No. 14 at 29. However, an ALJ is not bound by the decisions of other agencies in making his decision. *See* 20 C.F.R. § 416.904. Further, while the record must demonstrate that the ALJ considered all of the evidence, an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Here, the ALJ noted that he considered the entire record in making his decision. R. 20. In the Tenth Circuit, the general practice is to take a lower tribunal at its word when it declares that it has considered a matter. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Therefore, I take the ALJ at his word that he considered the entire record, including the

Otero County Department of Human Services assessment, and decline Ms. Willcoxon's request to reverse on this basis.

   H. **ALJ's finding that Ms. Willcoxon's statements are not entirely credible.**

Finally, Ms. Willcoxon takes issue with the ALJ's finding that her testimony was not entirely credible. ECF No. 14 at 30. The ALJ found that Ms. Willcoxon's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 20. To support this finding, the ALJ compared Ms. Willcoxon's testimony with her treatment records and the medical opinions of Drs. Ruwat and Weaver. R. 20–21. He found that the evidence in the record did not support some of her statements. *Id.* Further, the ALJ gave credence to Ms. Willcoxon's testimony regarding her activities of daily living in making his determination. R. 18. Because the ALJ supported his credibility determination and because his credibility decision is supported by substantial evidence, Ms. Willcoxon's final argument must fail. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) (finding that the ALJ sufficiently supported his credibility finding by indicating which evidence in the record contradicted or limited claimant's testimony).

**ORDER**

   For the reasons described above, the Court REVERSES and REMANDS the Commissioner's decision denying Mr. Willcoxon's application for supplemental security income benefits, and instructs the ALJ to reconsider her application in accordance with the dictates of this order.

DATED this 15th day of June, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge